FLOYD CARPENTER, Respondent, v. THE CHICAGO & ALTON RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 18, 1906.

1. RAILROADS: Killing Stock: Double Damages: Prayer. When a cause of action is stated under the double damage act and the verdict is had for the actual damages, the court at the instance of the plaintiff should double the damages assessed without regard to whether the petition had formerly asked that they be doubled or no. Cases considered and distinguished.

2. ——: ——: Lawful Tenant: Occupancy: Intermediate Proprietor: Instruction. Whether the plaintiff and his father were co-renters of the land on which the animal killed was left, is immaterial since the evidence shows they were co-occupants which would warrant the plaintiff leaving his horse on the premises.

3. ——: ——: Intermediate Proprietor: Lawful Fence and Instruction. Plaintiff left his horse on land between which and the railroad were intervening premises separated by a division fence. The horse strayed through the intervening premises and the defendant's fence on to the track and was killed. An instruction failed to submit to the jury the question of the lawfulness of the fence between the two premises but did submit to the jury the question of the lawfulness of the horse being in the intervening field. *Held*, that instruction was defective in both particulars.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

REVERSED AND REMANDED.

*Richard Field* and *Scarritt, Griffith & Jones* for appellant.

(1) The evidence showed that plaintiff was not the proprietor of, in fact had no right, title or interest in the Denham field. (2) In the next place plaintiff's instruction number 1 does not submit to the jury whether or not the fence between the Bates (Kibler) and Denham fields was a good and lawful fence. Ferris v. Railway, 30 Mo. App. 122; Harrington v. Railroad, 71 Mo. 384; Rinehart v. Railway, 80 S. W. 910. (3) Plaintiff's instruction number 1 did submit to the jury whether or not plaintiff's horse escaped from "plaintiff's field" and whether or not it was "lawfully" in the Bates field, but we contend that the instruction is erroneous not only because plaintiff's own evidence shows that his horse did not escape from "plaintiff's field;" but also in that it submits to the jury the question of the right of plaintiff's horse upon the Bates field as a question of law. The instruction reads as follows: "And while lawfully in said Bates field entered upon defendant's right of way." This was manifest error. State v. Forsythe, 89 Mo. 667; Speak v. Dry Goods Co., 22 Mo. App. 122; Miller v. Railroad, 56 Mo. App. 72; Rowen v. Railway, 82 Mo. App. 24. (4) In a law case both the plaintiff and the court are found by the *ad damnum* clause of the petition and it is error to enter judgment for more than the sum prayed for in the petition. Reed v. Crane, 89 Mo. App. 670; Balch v. Myers, 65 Mo. App. 422, 427; Carter v. Shotwell, 42 Mo. App. 663; Barker v. Railroad, 91 Mo. 86; McIntosh v. Railroad, 103 Mo. 131.

*John Welborn* and *Charles Lyons* for respondent.

Filed argument.

ELLISON, J.—This action was brought for the damages done plaintiff by the killing of his horse. The plaintiff prevailed in the trial court. It appears that the action is founded on section 1105, Revised Statutes 1899, providing that railway companies shall provide and maintain gates in their fences at farm crossings and that if on account of not so providing them injury results by reason of cattle, horses, etc., escaping onto the railway track, the owner may recover "double the amount of all damages which shall be done" to such horses, cattle, etc. The petition in this case states a cause of action under the statute. It places the value of the horse at one hundred dollars and closes with the following prayer; "Wherefore, by reason of the premises, plaintiff says that he has been damaged in the sum of $100, for which he asks judgment, and for all other and proper relief according to the statute in such cases made and provided." The jury returned a verdict assessing plaintiff's damages at $100 and this sum was afterwards doubled by the court and judgment accordingly entered for two hundred dollars.

The point is made that error was committed in entering judgment for two hundred dollars when only one hundred dollars was prayed for in the petition. We ruled in Young v. Railway, 33 Mo. App. 509, 518, that on a petition on a statute allowing treble damages for overcharge for freight in certain conditions, which stated the overcharge and concluded with a prayer for that amount and other proper relief, would authorize the court to treble the damages on a motion to that effect. It has always been the rule in this State that in cases where the amount of a plaintiff's damages as assessed by a jury may be doubled, trebled, etc., it becomes the duty of the court to make such increase and

render judgment accordingly. [Wood v. Railway, 58 Mo. 109.] So therefore, it would seem that when a cause of action is stated under such a statute and a verdict is had for the actual damage, it becomes the duty of the court, at the plaintiff's instance, to render judgfent for double the sum assessed, without regard to whether the petition had formally asked that it be doubled. It is a matter arising on the statute after the trial and independent of it. We so ruled in the Young case, supra, and we find nothing to the contrary in the decisions in this State. In an early case in California the following rule stated in Bacon's Abridgment was sustained; "That when treble damages are given by a statute, the demand for such damages must be expressly inserted in the declaration, which must either recite the statute or conclude to the damage of the plaintiff against the form of the statute." [Chipman v. Emeric, 5 Cal. 239.] But subsequently it was held in a case of forcible entry and detainer that when the jury assessed the actual damages claimed, it became the duty of the court to treble the sum without a prayer to that effect in the petition. [Tewksbury v. O'Connell, 25 Cal. 262.] So in Clark v. Worthington, 12 Pick. 570, an action under the statute for injury caused by defective highway, where the sole point made was that the actual damage found could not be doubled by the court when the petition did not so request, it was ruled that it could and that it was unnecessary to include it in the petition. And the same thing was afterwards held in Worster v. Canal Bridge, 16 Pick. 541, 549.

Defendant cites us to cases decided in this State which we think are not in point. The case of Balch v. Myers, 65 Mo. App. 427, was forcible entry and detainer and the damage assessed by the jury was more than asked for. That, of course, was improper. The same may be said of Moore v. Dixon, 50 Mo. 424. These cases do not meet the question we have discussed.

On the merits of the case: There are three pieces of

land concerned. Plaintiff lived with his father on a tract, the adjoining tract on the south being known as the Bates tract. The railroad ran between these two. Adjoining the Bates tract still south, was a tract known as Denham's. Plaintiff started one evening for a wolf hunt and rode the horse in controversy to the Denham field where he tied him to a bush. On returning to the place late in the night the horse was gone. At daylight plaintiff tracked him to the fence dividing the Denham and Bates fields, which was claimed by plaintiff not to be a lawful fence; there the horse passed through one of the many openings or gaps as claimed by plaintiff and proceeded on through the Bates field until he came to the defendant's railway fence and there passed through the open gateway onto the defendant's right of way where he was shortly afterward killed by a passing train. It is said that the court should not have submitted the hypothesis of the Denham tract being the plaintiff's field from which the horse escaped. Plaintiff's relation to the Denham tract was this: plaintiff lived with his father, and they, together, had the Denham field rented. That was sufficient upon which to base the instruction. It is true that defendant claims the evidence shows that the father exclusively had the field rented. We think taken in full it tends to show that both had it. But be that as it may, there is no doubt they both occupied it at pleasure and with the consent of each. That would be sufficient upon which to base the instruction.

But the instruction was erroneous in a respect prejudicial to defendant. It does not submit the question whether the fence between the Denham and Bates fields was a lawful fence, that is, it does not submit hypotheses of facts which would make it a lawful fence. If that fence was a lawful fence, then the railway company did not owe a duty to plaintiff to fence its track, since the Denham field where plaintiff's horse was

placed was not adjoining the railroad.  [Bank v. Railway, 109 Mo. App. 165; Seidel v. Railway, Ib. 160; Growney v. Railway, 102 Mo. App. 442.]

It was erroneous in another respect.  It submits to the jury whether the horse was "lawfully in the Bates field," thus submitting to them a question of law.

Even if it had submitted hypotheses of fact which would make up a lawful occupancy of the Bates field, there would have been no evidence upon which to base it.  The only evidence in that connection was that Bates gave plaintiff and his father mere permission to pass through his field in going to and returning from the Denham tract.  That was not a permission to occupy and gave them no interest or right of that sort.  It did not make them proprietors of that field in the sense that they could turn stock into it and become thereby adjoining proprietors to the railroad.

Plaintiff's case would seem to be that his horse, rightfully left in the Denham field, escaped thence through a defective fence into the Bates field, and thence through an open gate onto the railway, and so his brief puts the case here, but the error is with the instruction omitting the question of defective fence between the Denham and Bates fields and putting his case on a rightful occupancy of the Bates field.

The instructions given for defendant were all it should ask for a full understanding of the case as made by the evidence.  The judgment is reversed and cause remanded.  All concur.